UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  20-CIV-81360-RAR

COMERICA BANK,

     Plaintiff,

v.

EVERGLADES DRESSAGE, LLC, *et al.*,

     Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER

**THIS CAUSE** is before the Court upon Plaintiff Comerica Bank's Motion for Appointment of Receiver [ECF No. 54] ("Motion"), filed on December 28, 2020.  Plaintiff requests that this Court enter an order appointing Jason D. Post as receiver to take possession of the property at issue in this foreclosure action and grant to the receiver certain powers to oversee and manage said property.  Having carefully considered the Motion, Defendants' Response in Opposition to Plaintiff's Motion [ECF No. 59] ("Response"), Plaintiff's Reply in Support of its Motion [ECF No. 60] ("Reply"), as well as the record, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 54] is **GRANTED** for the reasons set forth below.

## BACKGROUND

In June 2015, Plaintiff and Defendant Everglades Dressage, LLC ("Everglades") entered into a mortgage and security agreement ("Mortgage") for a commercial property located in Palm Beach County, Florida known as 3905 Gem Twist Court, Wellington, Florida 33414 ("Property"), which operates as a horse farm.  Compl. [ECF No. 1] ¶ 12.  Shortly thereafter, Everglades executed and delivered a promissory note to Comerica which was secured by the Mortgage, and Defendant

Rosalie C. Peslar, individually, and as Trustee of the Rosalie C. Peslar Trust, executed and delivered a guaranty for "all existing and future Indebtedness" to Comerica by Everglades.  *Id*.  ¶ 14.  The parties refer to the Mortgage, the promissory note, and the guaranty, collectively, as the "Loan Documents."

Plaintiff filed its Complaint in this action on August 20, 2020, alleging that "Everglades is in default under the Loan Documents for failing to pay the monthly installment payment due on November 1, 2019, and all subsequent payments that have come due thereafter."  *Id*. ¶ 20.  In addition, Plaintiff alleges that Everglades is in default for: (1) failing to pay property taxes due and owing on the Property for 2019; (2) failing to secure and maintain adequate flood insurance coverage for the Property; and (3) failing to secure and maintain adequate hazard insurance coverage for the Property.  *Id*.

In its Motion, Plaintiff argues that the appointment of a receiver is necessary to prevent further waste of the Property and to ensure that it is adequately protected and managed during the pendency of this litigation.  Plaintiff points out that the Loan Documents agreed to by Defendants expressly provide for Comerica's right to secure the appointment of a receiver in the event of a default.  *See* Mot., Ex. 2. § 9.  While Plaintiff asserts that Everglades is using income received from the operation of the Property for purposes other than to repay Comerica, Mot. at 9, Defendants deny that any income is being generated from the Property, Resp. at 2.  Defendants believe the appointment of a receiver is unnecessary, as they aver that the Property is being adequately maintained and there is little for a receiver to do.  *Id*. at 3-4.

## **LEGAL STANDARD**

The parties dedicate a large portion of their briefs to arguing which state law applies. Plaintiff insists its Motion should be analyzed under the newly-enacted Florida Uniform Commercial Receivership Act, Fla. Stat. section 714.01 *et seq.*, while Defendant believes that

statute does not apply and the Motion should instead be analyzed pursuant to the Court's equitable powers under Florida common law.  Neither party is correct.

The Eleventh Circuit has made clear that "*federal law* governs the appointment of a receiver by a federal court exercising diversity jurisdiction*.*" *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (emphasis added).  Consequently, the federal courts in this state have consistently applied federal law to commercial real estate foreclosure actions based on diversity jurisdiction.  *See, e.g.*, *PNC Bank v. Shan Motel Co.*, No. 6:13-cv-926-Orl-36DAB, 2014 WL 12611034, at *2-3 (M.D. Fla. June 30, 2014); *3376 Lake Shore, LLC v. Lamb's Yacht Ctr., Inc.*, No. 3:14–cv–632–J–34PDB, 2014 WL 12621231, at *2 (M.D. Fla. Dec. 8, 2014); *Hawes v. Madison Ave. Media, Inc.*, No. 11-CV-81025, 2012 WL 12861096, at *2 (S.D. Fla. June 26, 2012).  *Accord DCR III Bowl, LLC v. Trussville Fam. Fun Ctr., LLC*, No. 2:12-cv-02229, 2012 WL 13020714, at *5 (N.D. Ala. July 2, 2012) ("[I]t is clear that federal law, not Alabama state law, controls whether the federal court, sitting in diversity jurisdiction, appoints a receiver. . . . Therefore, the court looks to federal law in this instance, even though the underlying action is entirely one of contract under state law.").  Accordingly, because Plaintiff's Complaint invokes diversity jurisdiction, this Court looks to Rule 66 of the Federal Rules of Civil Procedure, which provides that "[t]hese rules govern an action in which the appointment of a receiver is sought . . . [b]ut the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule."

Pursuant to Rule 66, district courts maintain "broad discretion to decide whether it is appropriate to appoint a receiver" over assets in dispute in litigation.  *PNC Bank, N.A. v. Prime Props. of Clearwater, Inc.*, No. 8:16-cv-747-T-23TGW, 2016 WL 11493324, at *1 (M.D. Fla. June 21, 2016) (quoting Moore's Federal Practice, § 66.04[1][b] (3d ed. 2015)).  While "no precise formula exists for determining when a court should resort to a receiver," *Hawes*, 2012 WL

12861096, at *2 (citation omitted), "federal courts may consider a variety of factors in determining whether a receiver is warranted, including: (1) the presence of a contractual receivership provision; (2) fraudulent conduct on the part of the defendant; (3) imminent danger that property will be lost or squandered; (4) the inadequacy of available legal remedies; (5) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's likelihood of success on the merits; and (7) whether the receivership will in fact serve the plaintiff's interests." *Regions Bank v. Legal Outsource PA*, No. 2:14–cv–476–FtM–29DNF, 2014 WL 7014559, at *5 (M.D. Fla. Dec. 11, 2014) (citing *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291). Moreover, it is well-established that a "receiver may be appointed to avert further loss of assets through waste and mismanagement." *Hawes*, 2012 WL 12861096, at *2 (citing *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969)); *see also DCR III Bowl, LLC*, 2012 WL 13020714, at *6 ("Most cases in which a receiver is appointed *pendente lite* involve some element of . . . waste or diminution of the value of the assets at issue.") (collecting cases). Finally, "[c]ourts have found 'the adequacy of the security and the financial position of the borrower to be the most important' factors in evaluating whether to appoint a receiver." *PNC Bank, Nat'l Ass'n v. Mktg. Goldmines Consulting LLC*, No. 20-cv-10672, 2021 WL 21762, at *3 (E.D. Mich. Jan. 4, 2021) (collecting cases).

## ANALYSIS

Defendants' affirmative consent in the Loan Documents to the appointment of a receiver weighs heavily towards finding such action justified. The receivership provisions, although "not dispositive . . . [are] a factor of substantial weight in balancing the equities." *Branch Banking and Trust Co. v. McIntyre Land Co.*, No. 2:19-cv-826, 2020 WL 3489339, at *3 (M.D. Ala. June 26, 2020) (Brasher, J.) (collecting cases); *see also, e.g.*, *3376 Lake Shore, LLC*, 2014 WL 12621231, at *3 ("[T]he receivership provision in the Mortgage weighs heavily in favor of granting the

requested relief.").  These provisions in the Loan Documents are sweeping, stating that Everglades "consents to the appointment of a receiver . . . who will enter upon and take possession of the [Property], collect the rents and profits therefrom and apply the same as the court may direct." Mot., Ex. 2 §§ 9, 11(F).

In addition, the Mortgage specifically provides that "[n]onpayment of any taxes or assessments levied or assessed upon the [Property]  . . . or nonpayment of any insurance premium upon any insurance policy relating to the [Property] shall constitute waste," which, in turn, provides Plaintiff the right to appoint a receiver.  *Id*. § 9.  Although Defendants deny in their Answer that they are in default under the Loan Documents for failing to pay property taxes and secure adequate insurance, *see* Defendants' Answer and Affirmative Defenses [ECF No. 50] ¶ 20, they do not contest—much less provide any rebutting evidence—that they have been deficient in paying both the applicable property taxes and insurance premiums for the past two years, meaning waste is likely present under the terms of the Mortgage.  "After signing multiple agreements including the Receiver clauses, Defendants cannot protest that [Plaintiff]'s request for a receiver is unexpected or unsupportable." *Branch Banking and Trust Co. v. Oldsmar Galleria, LLC*, No. 8:12–CV–679–T–17EAJ, 2012 WL 3262879, at *3 (M.D. Fla. July 20, 2012), *report and recommendation adopted*, 2012 WL 3243473 (M.D. Fla. Aug. 8, 2012).

Beyond the contractual provisions, there are sufficient indicia warranting the appointment of a receiver.  First, Plaintiff is likely to succeed on the merits of its claims, as Defendants do not contest that they are delinquent in necessary payments, which would mean they are in default under the Loan Documents.  *See Shan Motel Co.*, 2014 WL 12611034, at *3 ("[A]ppointment of a receiver is warranted.  To begin, it appears that [plaintiff] has valid claims, as [defendant] concedes in its Amended Response that it is in default under the loan documents and that [plaintiff] is entitled to a judgment of foreclosure.").

Second, even if waste were not present under the terms of the Mortgage, there is a risk of waste and loss of property for multiple reasons.  In her affidavit, Defendant-Guarantor Peslar claims that she is maintaining the Property using her "very limited resources" derived from "selling off personal effects such as jewelry and draining [her] other accounts available to [her]" and that "[t]hose assets have been almost completely depleted."  Resp., Ex.1 ¶¶ 13, 17-18.  This strongly indicates that Defendants will soon be unable to maintain the Property, causing further diminution in value.

Additionally, waste has been demonstrated by the unpaid taxes and insurance premiums; failure to obtain necessary insurance (another assertion Defendants do not contest); and the inadequacy of the collateral to secure the Mortgage.  As noted above, Defendants offer no evidence to rebut Plaintiff's assertions regarding their failure to meet their property tax and insurance obligations.  *Cf. RBS Citizens, N.A. v. 3800 Varsity Drive, LLC*, No. 11–11160, 2011 WL 13220758, at *5 (E.D. Mich. Sept. 9, 2011) (rejecting Plaintiff's assertions that Defendants' failure to pay property taxes constituted waste because Defendants offered information that they had paid a significant amount of their back-taxes and expected to have the remainder paid off in short order). In addition, Defendants admit that the Property has been listed for sale since 2017, but the only offers received would have been insufficient to satisfy the outstanding debt owed to Comerica by Everglades.  Resp. ¶ 10.  This, in combination with Defendants' failure to meet their tax and insurance obligations, compels the conclusion that there is a substantial risk that the property will be lost or diminished in value.  *See Mktg. Goldmines Consulting LLC*, 2021 WL 21762, at *3 ("Defendants' failure to pay the real estate taxes for three years makes the Property subject to being lost through a tax foreclosure.  Thus, the Property at issue is in imminent danger of being lost, concealed, injured, diminished in value or squandered, weighing in favor a appointment of a receiver.") (internal citation and quotation omitted); *Bank of Hope v. Dayk Enter., Inc.*, No. 2:20-

CV-155, 2020 WL 8254488, at *4 (M.D. Ala. Dec. 4, 2020) ("[W]here the value of the property does not exceed the value of defendants' indebtedness, defendants may have little or no financial incentive to maintain the property, making the situation ripe for abuse and waste."), *report and recommendation adopted*, 2021 WL 218730 (M.D. Ala. Jan. 4, 2021); *Oldsmar Galleria, LLC*, 2012 WL 3262879, at *3 ("[Plaintiff] has established danger of waste and risk of loss to the property through inadequacy of the collateral to secure the mortgages, and potential unpaid taxes and lack of insurance."). Likewise, that the current apparent value of the Property is insufficient to satisfy the outstanding debt further establishes the inadequacy of alternative legal remedies. *See, e.g.*, *Cadence Bank, N.A. v. E. 15th St., Inc.*, No. 8:12–CV–1833–T–17EAJ, 2013 WL 2151743, at *4 (M.D. Fla. May 16, 2013).

The Court also finds that harm to Plaintiff by denial of the appointment would be greater than any injury to Defendants by the appointment—and that the presence of a receiver will in fact serve Plaintiff's interests. Defendants state that "[t]he Property is not leased . . ." and "[t]here is no income being generated by the Property whatsoever." Resp., Ex. 1 ¶¶ 11-12. The Property is a multi-million-dollar commercial equestrian facility, and the Court agrees with Plaintiff that it could be generating income from a variety of services including hosting events, boarding, grooming, or training. Denial of the appointment would mean the Property remaining in the hands of a financially distressed borrower, whereas the receiver can ensure that any income-generating potential for the Property is fully realized. This clearly outweighs any harm that might befall Defendants from the appointment of a receiver.

## **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Appointment of Receiver [ECF No. 54] is **GRANTED**.

2.   Jason D. Post is appointed as receiver in this action ("Receiver") and shall take possession of the Property, together with all security thereto and shall have the following powers and duties:

    a.   To collect, control, manage, conserve, and protect the Property;

    b.   To operate the business constituting the Property, including preservation, use, sale, lease, license, exchange, collection, or disposition of the Property in the ordinary course of business;

    c.   To incur unsecured debt in the ordinary course of business and pay expenses incidental to the Receiver's preservation, use, sale, lease, license, exchange, collection, or disposition of the Property;

    d.   To seek and obtain instruction from this Court concerning the Property, exercise of the Receiver's powers, and performance of the Receiver's duties;

    e.   Upon subpoena, to compel a person to submit to examination under oath, or to produce and permit inspection and copying of designated records or tangible things, with respect to the Property or any other matter that may affect administration of the receivership;

    f.   To engage a professional as deemed necessary by the Court;

    g.   To assume control over the Property and to collect and receive all cash, current and past due earnings, revenues, rents, issues, profits, income, and cash collateral derived from the Property, and to use such cash solely for the purposes of maintaining and protecting the Property;

    h.   To prepare and maintain complete books, records, and financial reports of the Property, including, but not limited to, operating statements, income statements,

balance statements, and all other statements prepared for the Property, and provide copies of them to the Court, Comerica, and Everglades Dressage, LLC;

i.  To prepare and file in this case a full detailed report on the inventory, setting forth all receipts and disbursements relating to the Property;

j.  To take possession of all of the assets, files, papers, records, documents, and books in the possession, custody, or control of Everglades, or its agents, members, managers, or representatives, which relate solely to the operation, maintenance, or finances of the Property, as well as any and all cash on hand and receivables generated from the operating income, profits, and receipts of the Property;

k.  To employ agents, attorneys, servants, and employees and to contract as necessary for the purpose of taking possession of the Property, and managing and preserving the Property;

l.  To enter into such management or other service contracts as he deems necessary or appropriate to assist in the management, operation, and repair of the Property, including but not limited to, contracts for the construction of improvements and repairs, interior and exterior cleaning, painting, plumbing, and maintenance of air conditioners;

m.  To negotiate and execute leases (including amendments thereto and termination thereof) relating to the Property at competitive local rates;

n.  To pay as necessary to protect the Property and to prevent interest, collection fees, penalties, or default being imposed against the Property, all taxes, assessments, and other charges and impositions levied, assessed, or existing with respect to the Property, such payment to be added to the amount of the indebtedness pursuant to the terms of the Loan Documents;

o.  To provide appropriate security and protection for tenants, guests, and invitees of the Property, including but not limited to obtaining appropriate property insurance (including flood insurance) for the Property, public liability insurance, workman's compensation insurance, fire and extended coverage insurance, and burglary and theft loss insurance;

p.  To monitor, manage, and control the existing listing for sale of the Property, including the listing agreement related thereto, and to receive, analyze, and report to the Court and the parties any and all offers of purchase which are made by potential buyers of the Property, and to negotiate and execute a sales contract for the purchase of the Property as the Receiver deems appropriate or upon further direction of this Court.

3.  A telephonic status conference will be held in this matter with all parties, including the Receiver, **on March 26, 2021 at 11:00 A.M**.  The parties are instructed to call 1-877-402-9753 by no later than **10:55 A.M**.  The access code is 9372453 and the password is 0918. The Court requires that the parties appear via a landline (i.e., not a cellular phone or a speaker phone) for clarity.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 28th day of February, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**